UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
JUNIOR JUMPP,                                     :
                                                  :
             Plaintiff,             :
                                                  :           **ORDER DENYING**
   -against-                                    :           **EMERGENCY MOTIONS**
                                                  :           **AND RESCINDING** *IN*
AnJeannette McKenzie, *et al*,                    :           ***FORMA PAUPERIS***
                                                  :           **STATUS**
            Defendants.            :
                                                  :           24-CV-1931 (VDO)
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

      Plaintiff Junior Jumpp—an inmate in the custody of the Connecticut Department of Correction (DOC) at Garner Correctional Institution—filed this suit alleging that he is facing emergency harm at Garner because of a lack of access to treatment for a hernia. The Court has carefully reviewed each of Jumpp's filings, and now denies his various motions for emergency relief.

**I.**    **BACKGROUND**

      Jumpp brings claims under 42 U.S.C. § 1983 against 13 DOC employees, including several nurses and other medical staff, correctional officers, Garner's Warden, and DOC administrators.[1] He alleges that Garner staff refused to provide him with medical care for a

---

[1] Compl., ECF No. 1 at 1-3.

dangerous hernia unless he submitted to an invasive examination in the unit's dayroom: Specifically, Jumpp says, the nurse that he spoke with told him to lower his pants so that she could examine his hernia in view of others on the unit.[2] Jumpp states that he refused to do so.[3]

Following this incident, Jumpp avers, Garner staff repeatedly denied him access to medical care and retaliated against him for filing a Prison Rape Elimination Act claim stemming from the encounter.[4] This retaliation included transfer to a restricted housing unit and the destruction of his property.[5] He further claims that he has been banned from visiting the medical unit itself and that his requests for medical care are consistently rejected.[6] He contends that this conduct violated the Eighth Amendment of the United States Constitution,[7] and seeks monetary damages as well as injunctive relief.[8]

On December 6, the day after he filed his suit, Jumpp filed an additional motion seeking an "urgent" preliminary injunction and, on December 9, Jumpp filed a motion for an emergency hearing on his request for a preliminary injunction.[9] In his motion for a preliminary injunction, he requests an order for "immediate transfer out of Garner" because "being at Garner . . . would only [] jeopardize[] [him] . . . to further [h]arm and/or further retaliation by these defendants." Mot. for Prelim. Inj. at 1. He explains that he still had not received the

---

[2] *Id.* at 4-5.

[3] *Id.* at 5.

[4] *Id.* at 6-9.

[5] *Id.* at 8-9.

[6] *Id.* at 5-6, 16-18.

[7] *Id.* at 19-20.

[8] *Id.*

[9] Mot. for Prelim. Inj., ECF No. 10, Mot. for Emergency Hr'g, ECF No. 11.

medical treatment he requires and has instead been subject to comments from various defendants in this case that generally indicate an intent to retaliate against him for the original incident.[10] According to Jumpp, these comments included, among other things, a threat from a defendant to "beat" him. *Id.* at 9. He also alleges that he suffers from seizures and breathing issues and that the location of his new cell would make it difficult for him to get the attention of prison staff in a medical emergency.[11] Jumpp's various emergency requests seek much the same relief as his underlying complaint: transfer from Garner Correctional Institution (though Jumpp's complaint also seeks damages).

Thereafter, Jumpp filed several motions adducing further facts to support his original requests for relief, *see* ECF Nos. 13, 14, and 15, as well as a motion to reassign the case, *see* ECF No. 16. Unrelated to Jumpp's motion, the case was then reassigned to the undersigned on January 17, 2025.[12] The Court then denied as moot the motion to transfer the case,[13] and ordered the Connecticut Attorney General's office to file a response to Jumpp's motions.[14] Defendant Gerald Valletta, the physician primarily responsible for treating Jumpp, has now filed a comprehensive response in opposition.[15]

---

[10] *Id.* at 8-12.

[11] *Id.* at 10.

[12] Ord. of Transfer, ECF No. 17.

[13] Ord. Den. Mot. to Transfer, ECF No. 18.

[14] Ord. RE: Response, ECF No. 19.

[15] Mem. in Opp., ECF No. 24. In the intervening period, Jumpp again motioned for a preliminary injunction. Second Mot. for Prelim. Inj., ECF No. 23.

This opposition includes a declaration from Dr. Valletta.[16] In that declaration, Valletta explains that Jumpp is able to receive all prescribed medication[17] and that Jumpp is not "banned" from the medical unit at Garner.[18] To the contrary, Jumpp has been to the medical unit "numerous times" in recent months.[19] Valletta supplies specific dates that Jumpp has visited the medical unit, countering Jumpp's claims to the contrary.[20] Lastly, Valletta explains that he has no reason "to believe that [] Jumpp is experiencing any urgent, emergent, or emergency medical issue, including that his hernia condition does not and did not rise to those levels." Valletta Dec. at 3 ¶ 12. Valletta notes that Jumpp had a surgical consultation with a doctor from the University of Connecticut Health Center within the past few weeks, and that consultation did not indicate that Jumpp's hernia presented an emergency.[21]

## II.     DISCUSSION

### A.     Legal Standard

In the Second Circuit, the standards for emergency relief through a temporary restraining order and for a preliminary injunction "are the same." *Lee v. Trump*, No. 20-CV-2034 (JPO), 2020 WL 1330673, at *1 (S.D.N.Y. Mar. 23, 2020). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008).

---

[16] Valletta Dec., ECF No. 24-2.

[17] *Id.* at 2 ¶ 6.

[18] *Id.* at 2-3 ¶¶ 6-7.

[19] *Id.* at 2-3 ¶¶ 8-9.

[20] *Id.* at 2-3 ¶ 8.

[21] *Id.* at 4 ¶ 13.

"The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assoc., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). In contrast to "prohibitory" injunctions, an injunction seeking to alter the status quo is considered "mandatory." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). Generally, "[a] party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Id.* at 37. When a party seeks to disrupt the status quo through a mandatory injunction, as Jumpp does here by requesting transfer from Garner, they "must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits." *Id*. (quotations omitted).

B.     **Irreparable Harm**

Speculative, remote, or otherwise uncertain risk of future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). Jumpp argues that he faces irreparable harm because he lacks access to care for emergency medical conditions.

As a preliminary note, Valletta's declaration contradicts these claims in their entirety. Valletta makes clear that Jumpp is able to access the medical unit and to receive medication and monitoring. Most importantly, he describes his medical conclusion that Jumpp's hernia does not present an emergency. Regardless of Jumpp's views as to the urgency of his hernia,

the conclusions of a medical professional are more probative than a lay opinion in determining whether a medical issue constitutes an emergency. Contrary to Valletta, Jumpp has no training to lean on in evaluating whether he faces a medical emergency. *Cf. Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004).[22]

On the basis of Valletta's careful declaration, submitted under penalty of perjury, the Court concludes that Jumpp has not met the high standard of showing that his condition presents an imminent risk of irreparable harm absent injunctive relief.[23] The Court therefore denies Jumpp's motions seeking emergency relief or a preliminary injunction.[24]

---

[22] Where Jumpp's filings have failed entirely to adduce evidence of irreparable harm, he has no right to an evidentiary hearing. *See Woods v. Goord*, No. 1-CV-3255 (SAS), 2002 WL 31296325, at *1 n.2 (S.D.N.Y. Oct. 10, 2002).

[23] As to the potential for violence at the hands of correctional staff, though Jumpp's many descriptions of interactions with corrections staff are quite detailed, his filings include only minimal support for the claim that he might be attacked by corrections officers. He references only non-specific passing comments from corrections staff to support the argument that he will be subject to physical violence. These comments do not describe potential harm that is actual and imminent, but rather are the paradigm of non-specific, speculative potential harm. *See Daileader v. Certain Underwriters at Lloyd's London-Syndicate 1861*, 670 F. Supp. 3d 12, 35 (S.D.N.Y. 2023) ("a party seeking a preliminary injunction must make a specific, concrete showing of the harm it will suffer absent an injunction").

This conclusion furthered by the fact that no such violence has apparently occurred in the many months since Jumpp originally filed his motions.

[24] Because the Court concludes that Jumpp fails to meet his burden as to one of the preliminary injunction factors, the Court does not need to examine each of the preliminary injunction factors. *See Miller v. Miller*, No. 3:18-CV-01067 (JCH), 2018 WL 3574867, at *5 (D. Conn. July 25, 2018) ("As the finding of no showing of irreparable harm is dispositive, the court need not consider the other prongs of the preliminary injunction standard." (quotations omitted and alterations adopted)).

### C. Jumpp's *In Forma Pauperis* Status

Alongside his complaint, Jumpp filed a motion to proceed *in forma pauperis*.[25] *In forma pauperis* status allows incarcerated litigants to bring civil suits without prepaying the filing fee normally associated with bringing a civil case in federal court. *See generally* 28 U.S.C. § 1915; *Rosa v. Doe*, 86 F.4th 1001 (2d Cir. 2023). That motion was granted by the Court.[26]

Following a review of the District of Connecticut's docket, however, the Court finds more than twenty-five civil suits filed by Jumpp: In some of these cases, Jumpp has been denied *in forma pauperis* status pursuant to the "three-strikes rule." That rule "generally prevents a prisoner from bringing suit *in forma pauperis*—that is, without first paying the filing fee—if he has had three or more prior suits 'dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." *Lomax v. Ortiz-Marquez*, 590 U.S. ----, ----, 140 S. Ct. 1721, 1723 (2020) (quoting 28 U.S.C. § 1915(g) (cleaned up)). As other judges in this District have explained, Jumpp has had far more than three cases dismissed as frivolous. *See Jumpp v. Keegan*, 2020 WL 6383165, at *2 (D. Conn. 2020) (concluding that Jumpp has had more than three cases dismissed as frivolous and citing *Jumpp v. Marinelli*, 13-CV-615 (AWT) (dismissed June 28, 2013); *Jumpp v. Reyes*, 13-CV-637 (AWT) (dismissed May 13, 2013); *Jumpp v. DOC*, 13-CV-505 (AWT) (dismissed May 13, 2013)). As a result, Jumpp would ordinarily be ineligible for *in forma pauperis* status.

---

[25] Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2.

[26] Ord. Granting Leave to Proceed *In Forma Pauperis*, ECF No. 12.

However, in *Jumpp v. Keegan*, as here, Jumpp sought to invoke an exception to the three-strikes rule allowing prisoners otherwise subject to the rule to proceed *in forma pauperis* if "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).[27] For that reason, Jumpp's motion for leave to proceed *in forma pauperis* was originally granted.[28] With the benefit of the declaration from Jumpp's treating physician, the Court has now concluded that Jumpp has not sufficiently alleged that he is facing imminent harm.

Therefore, the Court reconsiders its order granting Jumpp's motion for leave to proceed *in forma pauperis* and now concludes that his motion must be denied because he would ordinarily be ineligible under the three-strikes rule and has not met the standard for an exception. *See Brodsky v. J.P. Morgan Chase & Co.*, No. 17-CV-5529 (JS), 2019 WL 181316, at *1 (E.D.N.Y. Jan. 10, 2019) ("A federal district court has the authority to rescind or revoke the in forma pauperis status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted." (citation omitted and alterations adopted)); *see also Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006) ("the inmate must make specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury") (internal quotations omitted); *Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007) (to invoke the imminent danger exception, a complaint must "make[] a plausible allegation that the prisoner faced imminent danger of serious physical injury at the time of filing") (internal quotations

---

[27] *See* also Mot. for Prelim. Inj. at 2.

[28] *See* Ord. Granting Mot. for Leave to Proceed *In Forma Pauperis*.

omitted). The Court notes that this denial is *without prejudice*: if the situation Jumpp describes becomes one in which he faces imminent danger, he is free to refile his motion or to bring another case.

Further, federal law requires district courts to collect certain fees, including case filing fees, from litigants. *See* 28 U.S.C. § 1914(b). Because Jumpp is now no longer proceeding *in forma pauperis*, he must pay the filing fee in order to proceed with this action. Accordingly, on or before March 26, 2025, Jumpp must pay the filing fee in full, or the Court will dismiss this action without prejudice.[29] For the time being, the Court stays this action pending Jumpp's payment of the fee. *See* Ruling on Pl.'s Mot. to Reopen, ECF No. 10 at 5, *Rodriguez v. Rodriguez et al.*, 21-CV-1260 (CSH) (D. Conn. Aug. 16, 2022) ("[A] case cannot proceed unless the issue of the Court's filing fee is resolved.").

Lastly, the Court takes notice of Jumpp's use of a long out-of-circulation *in forma pauperis* motion form. As the Court has cautioned other litigants, "[f]uture failures to use the correct financial affidavit form may result in denial of the request." Ord. Granting Mtn for Leave to Proceed *In Forma Pauperis*, ECF No. 9, *Flammia v. Kijakazi*, No. 24-cv-569 (MEG), (D. Conn. Apr. 5, 2024); *see also* Notice of Insufficiency, ECF No. 10, *Coarts v. Quiros*, No. 24-cv-1000 (VAB), (D. Conn. June 7, 2024). Jumpp is using a version of the Court's *in forma pauperis* form that is nearly two decades old.[30] Jumpp is hereby noticed that, in filing future actions, he must use the updated *in forma pauperis* form.

---

[29] If he is able to show good cause for delay, Jumpp may request an extension.

[30] See Mtn for Leave to Proceed *In Forma Pauperis* at 1 (showing a "revised" date of 8/1/07 on the form).

### III.  CONCLUSION

The Court **denies** Jumpp's motions seeking emergency relief (ECF Nos. 10, 11, and 23), **reconsiders** the grant of Jumpp's motion for leave to proceed *in forma pauperis* and **denies** that motion (ECF No. 2), **orders** Jumpp to pay the filing fee in full **on or before March 26, 2025** or the case will be dismissed, and **stays** this action pending payment of the fee.

**SO ORDERED.**

Hartford, Connecticut
February 25, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge